UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE


Mohammed Reza Enayat

        v.                              Civil No. 07-cv-72-JD

United States of America


O R D E R

   Mohammed Reza Enayat has moved pursuant to 28 U.S.C. § 2255
to vacate, set aside, or correct the sentence ordered by the
court following his conviction in United States v. Mohammed Reza
Enayat, No. 03-cr-82-JD.  The United States has filed its
response.  Enayat has filed a reply.


Background

   Enayat owned an oriental rug store in Bedford, New
Hampshire.  He is a native of Iran who became a permanent
resident alien in the United States in 1989.  In the course of
doing business, Enayat became acquainted with Beruz Jalili, an
oriental rug distributor and store owner in Berkeley, California.

   In July of 2001, Jalili received a check for $113,800 in his
post office box.  The check was from QAD, Inc. and was made
payable to Innuendo, LLC, which are both software companies
unrelated to Jalili.  The check was mistakenly put into Jalili's

post office box, apparently because Innuendo's post office box
was next to Jalili's box.

During that time, Jalili was helping a friend, Monsoor
Javanbakht, to collect proceeds from a liquidation sale of
Javanbakht's business after Javanbakht had returned to Iran.
Jalili also had hired Javanbakht's former employee, Jalal
Mousakhani, to help with that process.[1]  Mousakhani found the
$113,800 check in Jalili's box when he picked up the mail, and he
attempted, unsuccessfully, to deposit it in Javanbakht's account.
Mousakhani then showed the check to Jalili.  Mousakhani also told
Enayat about the check.

Enayat discussed the check with Jalili during a telephone
conversation and asked to use it as part of a sales pitch to
impress some of his clients.  The check was sent to Enayat, who
received it on July 31, 2001.  Several days later, Enayat
delivered the check to Stuart Carpenter, the owner of Copley
Motor Cars in Boston, and asked Carpenter to deposit the check in
his business account.  Enayat explained that he had received the
check from a customer in San Francisco who had purchased an

---

[1]Mousakhani apparently also used the name Jack Moosa.

expensive rug.  Carpenter deposited the check, which was endorsed "Innuendo, LLC" and then paid debts owed by Enayat's business.[2]

In October of 2001, Innuendo called QAD to ask about payment for software services.  QAD investigated and found that the check had been sent, endorsed, cashed, and returned.  QAD also discovered that the endorsement was forged.  The Bank of America, which had paid on the forged endorsement, reimbursed Innuendo and then debited that amount from Carpenter's account.  Carpenter contacted Enayat, who began to repay Carpenter.

Following an investigation by the FBI, Enayat was charged in April of 2003 with receipt, possession, and disposal of a stolen security.  He was represented by Attorney William Christie until November of 2004.  He retained Attorney Robert Jubinville in December of 2004.  Enayat was tried and found guilty on the charge of receipt, possession, and disposal of a stolen security in January of 2005.  Jubinville moved for judgment of acquittal at the close of the government's case and filed a motion for a new trial after the verdict.  Both motions were denied.  He was sentenced to eighteen months in prison, three years of supervised release, a penalty assessment of $100, and restitution to Carpenter of $93,800.  His conviction was affirmed on appeal.

---

[2]The check had been endorsed "DEP M. Javanbakht, Wells Fargo account 003961351," which was scratched or whited out, and then endorsed "Innuendo, LLC."

The Immigration and Naturalization Service ("INS") began removal proceedings based on Enayat's conviction.  An INS "Notice to Appear" was served on Enayat in March of 2007.  The Notice informed Enayat that he was subject to removal based on §§ 237(a)(2)(A)(I) and (iii) of the Immigration and Naturalization Act.

## Discussion

In support of his motion for § 2255 relief, Enayat contends that his trial counsel, Robert Jubinville, provided constitutionally ineffective representation.  Specifically, Enayat alleges that Jubinville gave him erroneous advice that caused him to reject an offer of a favorable plea agreement, that Jubinville failed to request a needed continuance to prepare for trial, that he did not adequately investigate the case, and that he did not present an adequate defense at trial.  The United States objects to Enayat's request for relief under § 2255.

When a federal prisoner seeks relief under § 2255, "a district court must grant an evidentiary hearing on the prisoner's claims unless 'the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief.'"  Owens v. United States, 483 F.3d 48, 57 (1st Cir. 2007).  If no hearing is held, the prisoner's sworn allegations

4

of fact are taken as true, although conclusory statements, statements that conflict with the record, and statements that are "inherently incredible" need not be considered.  Id.

In this case, the court ordered the government to file a response to Enayat's motion, which it has done.  Enayat has filed a reply to the government's response.  Enayat and the government agree that a hearing is not necessary to resolve the claims he raises.

Constitutionally ineffective assistance of counsel is demonstrated in two steps.  "[A] defendant must show that 'counsel's representation fell below an objective standard of reasonableness,' and that 'the deficient performance prejudiced his defense." Owens, 483 F.3d at 57 (quoting Strickland v. Washington, 466 U.S. 668, 687–88 (1984)).  Deficient performance means "that counsel was not acting within the broad norms of professional competence." Id.  Prejudice occurs when "but for counsel's deficient performance, there is a reasonable probability that the outcome would have been different." Id. at 58.

A.  Advice to Reject Plea Agreement

Enayat faults Jubinville for advising him to reject the government's offer of a plea agreement.  He contends that the

5

offered plea agreement was favorable because he would have served less time in prison and would have avoided the INS removal proceedings.  Enayat states in his affidavit that Jubinville advised him to reject that offer because he would be immediately deportable if he pled guilty based on the offered agreement.

Enayat's former counsel, William Christie, provided his affidavit about the terms of the plea offer.  He states that the government offered to recommend a five month sentence of incarceration followed by five months of home confinement and to amend the indictment to allege that the stolen check was $5,000 or more rather than the actual amount.  He also states that the plea agreement was intended to permit Enayat to defend against deportation proceedings based on the amount of the check.

The INS cited three grounds for removal proceedings.  While the plea agreement, as described by Christie, might have allowed Enayat to defend against removal based on the cited parts of § 237(a)(2)(A)(iii) of the Act, the Notice also cited § 237(a)(2)(A)(I).  Under subsection (I), as codified at 8 U.S.C. § 1227(a)(2)(A)(I), an alien "who is convicted of a crime involving moral turpitude committed within five years . . . after the date of admission and is convicted of a crime for which a sentence of one year or longer may be imposed, is deportable."  (Emphasis added.)

6

Receiving stolen property is a crime of moral turpitude.
Saleh v. Gonzales, 495 F.3d 17, 19 (2d Cir. 2007).  Enayat does
not dispute the INS's charge that his last admission into the
United States was in 2001, within five years of his conviction in
2005.  Enayat also does not dispute that he would have been
convicted, based on the proposed guilty plea, on the charge of
violating of 18 U.S.C. § 2315.

The maximum penalty for conviction on a charge under § 2315
is ten years of imprisonment and a fine.  The requirement that a
sentence of one year or longer may be imposed means that
conviction exposed the alien to that sentence not that the
sentence was actually imposed.  Aquino-Encarnacion v. I.N.S., 296
F.3d 56, 57 (1st Cir. 2002).  Although the plea agreement would
have imposed only five months of imprisonment, § 2315 exposed
Enayat to a potential sentence of up to ten years.  Therefore,
because the circumstances of his conviction under the proposed
plea agreement would have met the terms of § 237(a)(2)(A)(I),
Enayat cannot show that Jubinville's advice was unreasonable or
that he was prejudiced by following that advice.


B.  Failure to Request a Continuance

Enayat argues that Jubinville's performance was deficient
because he failed to request a continuance to prepare for trial

7

after he entered his appearance on December 9, 2004, when the
trial was scheduled to begin on January 19, 2005.  He also
contends that Jubinville should have requested a continuance
during trial after Jalili testified that he had given the FBI a
handwriting sample.  Because the handwriting sample is also
grounds for the next claim, it will be addressed there.

Enayat states that the six weeks between Jubinville's
appearance in the case and trial did not allow enough time for
Jubinville to prepare, to investigate, to interview witnesses,
"and so forth."  Enayat provides no factual basis to show that
those activities were necessary, nor does he show what prejudice
resulted.  Instead, the record shows that Attorney Christie
represented Enayat for a year and a half until Enayat decided to
switch to Jubinville just six weeks before trial.  The government
provides a detailed summary of the trial to show that Jubinville
was thoroughly prepared.  The conclusory statements Enayat
provides are insufficient to show that he suffered prejudice,
even if Jubinville's failure to request a continuance were deemed
to be deficient representation.


C.  Failure to Investigate

Enayat criticizes Jubinville for failing to investigate the
FBI's analysis of Jalili's handwriting sample, for failing to

8

make a <u>Giglio</u> request about promises made to Jalili, and for failing to challenge the government's evidence about the usual markup on Persian rugs.  The government contests the importance of the handwriting sample, mistakenly referring to it as "Fingerprint Analysis," dismisses the <u>Giglio</u> issue, and overlooks the issue of the markup on Persian rugs.[3]

### 1.  Handwriting analysis.

Enayat contends that if the FBI's handwriting analysis showed or suggested that Jalili endorsed the check, that evidence would have supported Enayat's defense that he did not know the check was stolen.  Alternatively, he contends that the evidence would have undermined Jalili's credibility.  In response, the government states, but without evidentiary corroboration, that no handwriting sample was ever analyzed and that the law enforcement reports do not indicate that a handwriting sample was ever taken from Jalili.  The evidence is unresolved as to whether any handwriting analysis was done.

The government also points out that even if a handwriting analysis showed that Jalili endorsed the check, that would not affect the charge that Enayat knowingly received, possessed, and disposed of a stolen check.  The check was on QAD's account and

---

[3]<u>See</u> <u>Giglio v. United States</u>, 405 U.S. 150 (1972).

was made payable to Innuendo.  Jalili testified that Enayat learned about the check from Mousakhani and that he, Jalili, told Enayat that the check did not belong to Jalili, Mousakhani, or Javanbakht.  Jalili testified that Enayat told him he wanted to use the check for a sales pitch.  The check was then sent to Enayat.  Several weeks later, Enayat told Jalili that he had shown the check to a girl in a bar, that the check was torn, and that he had thrown it away.

Enayat now acknowledges that he did not throw the check away but instead had Stuart Carpenter deposit it in Carpenter's business account to pay debts owed by Enayat's business. Carpenter testified that Enayat told him that the check was payment for a rug.  Jalili testified that the check was not sent to Enayat as payment for a rug, that he had not purchased any rugs from Enayat during that time, and that the check was not sent for any other business purpose.

As such, the evidence at trial was that Enayat knew the check was stolen.  Enayat does not explain why Jalili's endorsement would suggest that Enayat believed the check was payment to him for a rug.  In addition, even if the results of a handwriting analysis could have been used to impeach Jalili's testimony that he did not recognize the endorsement as his

handwriting, such tangential impeachment evidence would not likely have changed the outcome of the trial.

### 2. Giglio request.

The prosecution has a duty to disclose, when requested to do so, "'evidence favorable to an accused,'" including impeachment evidence such as immunity granted to a witness for testifying. United States v. Duval, 496 F.3d 64, 72-73 (1st Cir. 2007) (quoting Brady v. Maryland, 373 U.S. 83, 87 (1963), and citing Giglio, 405 U.S. at 154). Enayat argues that Jubinville should have made a Giglio request to learn what promises of leniency or immunity the government had made to Jalili. Enayat, however, does not provide any evidence that a Giglio request would have produced impeachment evidence.

Instead, Enayat argues that in the absence of a Giglio request by Jubinville, he has no means to discover what the government might have disclosed that could have been used at his criminal trial. To the contrary, Federal Rule 6 of the Rules Governing § 2255 Cases provides for discovery. Enayat, who is represented by counsel in this proceeding, did not move for discovery on this issue or any other issue raised here.

In the absence of any evidence that he was prejudiced by Jubinville's failure to make a <u>Giglio</u> request, Enayat has not shown ineffective assistance of counsel on this issue.

### 3. Markup on rugs.

Enayat contends that Jubinville was deficient in failing to investigate the usual markup on Persian rugs to challenge the government's evidence that the markup was 10% to 15%. Enayat claims the markup is ordinarily 600%. He contends that evidence of a higher markup percent was important to show that a check for $113,800 could be payment for a rug.

Enayat, however, offers no evidence to support his markup theory. In the absence of evidence that the usual markup was 600%, his counsel's statement to that effect is not persuasive. Although Enayat represents that evidence of a usual 10% to 15% markup was unchallenged, Jalili testified at trial that he used a 25% to 85% markup at his store. Jalili also testified that some stores used a 100% markup but that anything higher would not sell. Even if evidence of higher markups had been submitted, such evidence would not have provided a probability of a different result.

D.  Failure to Present an Adequate Defense

Enayat contends that Jubinville failed to present an adequate defense because he failed to interview potential witnesses, failed to prepare Enayat to testify in his own defense, and failed to properly present the request for a new trial.  The government disputes the claims Enayat raises.

1.  Potential witnesses.

Enayat states that Jubinville "failed to interview any potential witnesses in preparation for trial."  He does not elaborate, however, as to what witnesses should have been interviewed, whether previous counsel interviewed witnesses, or what testimony could have been presented through the absent witnesses.  Cf. Lema v. United States, 987 F.2d 48, 54 (1st Cir. 1993).  Therefore, even if a question were raised as to the adequacy of Jubinville's preparation, Enayat fails to provide any grounds for prejudice resulting from a failure to interview witnesses.

2.  Failure to prepare Enayat to testify.

In his affidavit, Enayat states that he wanted to testify at his trial but that Jubinville advised him that the court would prefer that he not testify.  Enayat's memorandum in support of

13

his motion for § 2255 relief, however, changes the focus of that statement from a suggestion that counsel prevented Enayat from testifying to a complaint that Jubinville failed to prepare Enayat to testify.  Enayat contends that because he was not prepared, he had no choice but to forego his right to testify in his own defense.

A criminal defendant has a right to testify in his own defense, and defense counsel is obligated to inform a defendant of his right to testify.  Owens, 483 F.3d at 58.  Counsel's failure to consult with his client about the right to testify is deficient representation.  Id.  Failure to inform a client of the right to testify, when the court does not independently inform the defendant of his right to do so, is prejudicial if the defendant "would have offered genuinely exculpatory testimony" but not if the defendant would have testified "only to demonstrate that the prosecution failed to disprove his defense." Id. at 59.

Under the circumstances Enayat describes, it appears that Jubinville discussed Enayat's right to testify but discouraged him from doing so.  Assuming that Enayat wished to testify and was prevented from doing so by his counsel, he must show that he was prejudiced.  Enayat provides no evidence or even allegations of any kind as to what his testimony would have been.  As a

14

result, no basis exists to assume that his testimony would have been exculpatory.  In the absence of prejudice, Enayat has not shown ineffective assistance based on his inability to testify at his trial.

### 3.  Motion for a new trial.

Jubinville moved for a judgment of acquittal at the close of the government's case and then moved for a new trial after the jury's verdict.  The motion for a new trial consisted of three sentences that asked the court to "grant this Motion for a new trial, which is in accordance with Rule 33 of the Fed. R. of Crim. P.  . . . not act on this motion pending completion of the trial transcripts, . . . [and] grant this motion for a New Trial at that time."  Doc. 40.  The court denied the motion, stating: "No basis exists for granting this motion."  On appeal, the court concluded that Enayat waived his challenge to the denial of his motion for a new trial by not raising the argument in the motion. Assuming that Jubinville's bare-bones motion for a new trial was deficient, Enayat must show that had the appellate argument been raised initially a reasonable probability exists that the outcome would have been different.

Under Federal Rule of Criminal Procedure 33, a defendant may move for a new trial in the interest of justice, which provides a

broad basis for the motion.  <u>United States v. Indelicato</u>, 611 F.2d 376, 387 (1st Cir. 1979).  In exercising its discretion under Rule 33, the court weighs and evaluates the credibility of the evidence.  <u>United States v. Wilkerson</u>, 251 F.3d 273, 278 (1st Cir. 2001).  The remedy of a new trial, however, is reserved for the unusual case where "the evidence preponderates heavily against the verdict" and the verdict constitutes a miscarriage of justice.  <u>Id.</u>

Enayat's appellate argument was that a new trial was justified because Jalili's testimony about whether or not he endorsed the check was so uncertain that it provided the kind of discrepancy or uncertainty that would warrant a new trial.  <u>See, e.g.</u>, <u>United States v. Martinez</u>, 763 F.3d 1297, 1313 (11th Cir. 1985) ("[C]ourts have granted new trial motions based on weight of the evidence only where the credibility of the government's witnesses had been impeached and the government's case had been marked by uncertainties and discrepancies.").  As is discussed above, even if Jalili endorsed the check, that is not an issue that would provide a reasonable probability of a different outcome in this case.  Enayat's conviction is not the unusual case where a new trial was necessary to avoid a miscarriage of justice.

<u>Conclusion</u>

For the foregoing reasons, the plaintiff's initial pleading and memorandum for relief under § 2255 (docs. 1, 10, and 11) are denied.  The clerk of court shall enter judgment accordingly and close the case.

SO ORDERED.


_____
Joseph A. DiClerico, Jr.
United States District Judge

October 19, 2007

cc:  Edward J. Juel, Esquire
     Aixa Maldonado-Quinones, Esquire

17